1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   KELLEY S. SIMPSON;                  No.  2:19-cv-02389-JAM-KJN
     CHRISTOPHER L. SITTENAUER;
12   CHRISTOPHER E. SITTENAUER;
     LKS; and BAS and ZES, minors
13   by and through their Guardian    **ORDER GRANTING DEFENDANT'S**
     ad Litem, KELLEY S. SIMPSON,      **MOTION TO TRANSFER, DENYING**
14                                      **PLAINTIFFS' MOTION TO EXERCISE**
                    Plaintiffs,         **COLORADO RIVER ABSTENTION, AND**
15                                      **DECLINING TO ADJUDICATE**
          v.                            **PLAINTIFFS' MOTION FOR A**
16                                      **DISCRETIONARY STAY**
     STATE FARM MUTUAL AUTOMOBILE
17   INSURANCE CO.; and DOES 1-10,

18                    Defendants.

19

20        Plaintiffs filed a suit against their car insurance company

21   in Placer County Superior Court.  They allege Defendant

22   unlawfully deprived them of personal insurance protection

23   benefits following a car accident in California.  Ex. 1 to Notice

24   of Removal, ECF No. 1.  Plaintiffs filed their complaint

25   alongside two personal injury suits stemming from the car

26   accident.  Before Plaintiffs could consolidate the three cases,

27   Defendant removed this suit to federal court.  It now seeks to

28   transfer the case to the Eastern District of Michigan.  Mot. to

                                 1

1  Transfer Venue, ECF No. 3.  Plaintiffs opposed this motion, ECF

2  No. 10, and filed a motion to either stay the federal court

3  proceedings pending resolution of the action in state court or

4  abstain from exercising its jurisdiction.  Mot. to Stay, ECF No.

5  8.[1]  State Farm opposed Plaintiffs' motion.  ECF No. 9.  For the

6  reasons discussed below, the Court GRANTS Defendant's motion to

7  transfer.  Moreover, the Court DENIES Plaintiffs' motion to

8  exercise Colorado River abstention and DECLINES TO ADJUDICATE

9  Plaintiffs' motion for a discretionary stay.

10

11                    I.   BACKGROUND

12      Two years ago, Christopher E. Sittenauer ("Sittenauer"), his

13  mother, and his three younger siblings traveled from Michigan to

14  California.  Ex. 1 to Notice of Removal ¶ 2 ("Compl."), ECF No.

15  1.  While in California, they were involved in a serious car

16  accident.  Compl. ¶ 1.  Plaintiffs allege this accident occurred

17  because another driver, Holly Van Doren, crossed over a double-

18  yellow line, veering into Sittenauer's lane.  Compl. ¶ 1.

19  Everyone in Sittenauer's car suffered injuries in the collision.

20  Compl. ¶ 2.  They, along with Sittenauer's father—the primary

21  policyholder for Plaintiffs' insurance policy—filed suit in

22  Placer County Superior Court.  See Mot. to Stay at 2-3.

23      Initially, all of the plaintiffs in this case filed a

24  personal injury suit against Van Doren.  Mauer Decl. ISO Mot. to

25  Stay ("Mauer Decl.") ¶ 4, ECF No. 8-2.  But shortly thereafter,

26

27  [1] These motions were determined to be suitable for decision
    without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28  scheduled for May 5, 2020.

                              2

1  Plaintiffs Kelley Simpson, Christopher L. Sittenauer, Brigitta
2  Sittenauer, and Zoe Sittenauer voluntarily dismissed their claims
3  without prejudice and refiled with new counsel.  Id.  The second
4  suit named both Van Doren and Sittenauer as defendants.  Id.  The
5  third suit arose between Plaintiffs and State Farm when the
6  insurance carrier denied them certain no-fault personal insurance
7  protection ("PIP") benefits provided by Michigan's No-Fault
8  Automobile Insurance Act (MCL 500.3101, et seq.).  Compl. ¶¶ 11,
9  15-18.

10

11                          II.   OPINION
12      A.   Abstention
13      Plaintiffs contend the Court should abstain from exercising
14  its jurisdiction over this suit under the Colorado River
15  abstention doctrine.  Mot. to Stay at 8.  Although Plaintiffs
16  argue for Colorado River abstention as an alternative to a
17  discretionary stay, the Court finds it proper to address
18  jurisdiction-related issues first.  In doing so, the Court finds
19  Colorado River abstention is not proper here.
20      Federal courts "have a 'virtually unflagging
21  obligation . . . to exercise the jurisdiction given them,'
22  including in cases involving parallel state litigation."  Seneca
23  Ins. Co. v. Strange Land, Inc., 862 F.3d 835, 841 (9th Cir.
24  2017) (quoting Colo. River, 424 U.S. at 817).  Even so, "[t]he
25  Colorado River doctrine allows a district court to stay or
26  dismiss a federal suit 'due to the presence of a concurrent
27  state proceeding for reasons of wise judicial administration.'"
28  Minucci v. Agrama, 868 F.2d 1113, 1115 (9th Cir. 1989) (quoting

1  Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S.
2  1, 15, 103 S.Ct. 927, 936 (1983)).

3  Federal courts may only "[a]bdicat[e] . . . the obligation
4  to decide cases" under Colorado River "in [] exceptional
5  circumstances."  Seneca Ins. Co., 862 F.3d at 841.  They must
6  balance eight factors to determine whether exceptional
7  circumstances exist: (1) which court first assumed jurisdiction
8  over any property at stake; (2) the inconvenience of the federal
9  forum; (3) the desire to avoid piecemeal litigation; (4) the
10 order in which the forums obtained jurisdiction; (5) whether
11 federal law or state law provides the rule of decision on the
12 merits; (6) whether the state court proceedings can adequately
13 protect the rights of the federal litigants; (7) the desire to
14 avoid forum shopping; and (8) whether the state court
15 proceedings will resolve all issues before the federal court.
16 Id. at 841-42.  "Any doubt as to whether a factor exists should
17 be resolved against a stay [or dismissal]."  Id. at 842 (quoting
18 Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1369 (9th Cir.
19 1990)).

20 As both parties agree, the first factor does not apply.
21 Mot. to Stay at 9; Opp'n to Stay at 6 n.3.  The second, fourth,
22 and seventh factors, however, weigh in favor of abstaining.
23 Adjudicating a suit in federal court is not per se inconvenient
24 when a similar suit is pending in state court.  But when two out
25 of three similar suits are pending in state court, awaiting
26 consolidation, it is undoubtedly inconvenient to have the third
27 component litigated in a separate city, before a different
28 judge, bound by a separate set of procedural rules.  Defendant's

4

1    conclusory statement to the contrary does not sway the Court.
2    See Opp'n to Stay at 6.

3        The fourth factor is undisputed—Placer County Superior
4    Court obtained jurisdiction over the state suits first.  Mauer
5    Decl. ¶ 2. Moreover, the Court finds that exercising its
6    jurisdiction over this case would promote forum shopping.
7    Defendant argues that if any party has engaged in forum shopping
8    it was Plaintiffs: Michigan residents with a Michigan insurance
9    policy who opted to file their lawsuit in California.  Opp'n to
10   Stay at 7.  This argument ignores all relevant context.
11   California is likely the only state whose courts would have
12   personal jurisdiction over the defendants in all three cases.
13   Bearing this jurisdictional consideration in mind, Plaintiffs
14   filed in the forum that would allow them to adjudicate all three
15   components of their suit in the state where the accident
16   occurred.  Even though Defendant has offices and attorneys in
17   California, it opted to disrupt Plaintiffs' reasonable choice of
18   forum—first, removing the suit to federal court, then requesting
19   to transfer it halfway across the country.  These forum-shopping
20   efforts weigh heavily in favor of abstention.

21       The fifth factor—whether federal or state law provides the
22   rule of decision on the merits—is neutral.  The "presence of
23   federal-law issues must always be a major consideration weighing
24   against surrender" of jurisdiction.  Moses H. Cone Memorial
25   Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 (1983).  But as
26   Plaintiffs argue, the inverse is not always true.  Mot. to Stay
27   at 11.  The "the presence of state-law issues may weigh in favor
28   of [abstention]" only "in some rare circumstances."  Moses H.

1   Cone Memorial Hosp., 460 U.S. at 26.  The state law issues must

2   be so unusually complex that they are better suited for

3   adjudication by the court most familiar with that state's law.

4   Seneca Insur. Co., Inc. v. Strange Land, Inc., 862 F.3d 835, 844

5   (9th Cir. 2016).  Plaintiffs' insurance contract claims are not

6   unusually complex.  Nor is a California state court uniquely

7   familiar with the Michigan law that governs those claims.  That

8   state law provides the rule of decision weighs neither in favor

9   nor against abstention.

10       The remaining factors—factors three, six, and eight—counsel

11  against abstention.  Contrary to what Plaintiffs argue,

12  adjudication of this suit in federal court will not result in

13  piecemeal litigation at all, let alone the type of piecemeal

14  litigation that the Colorado River abstention doctrine deems

15  troublesome.  "Piecemeal litigation occurs when different

16  tribunals consider the same issue, thereby duplicating efforts

17  and possibly reaching different results."  Seneca Ins. Co., 862

18  F.3d at 842 (quoting Am. Int'l Underwriters (Philippines), Inc.

19  v. Cont'l Ins. Co., 843 F.2sd 1253, 1258 (9th Cir. 1988)).

20  Plaintiffs' federal and state court suits do not implicate the

21  same legal issues.  Plaintiffs' state court suits aim to assess

22  drivers' relative fault in the car accident that caused

23  Plaintiffs' injuries.  This suit, on the other hand, revolves

24  around the question of whether they are entitled to benefits for

25  the injuries they incurred.  The issues pending in state court

26  are, in a layman's sense, related to the issues in this suit.

27  And resolution of the state court proceedings may aid the

28  federal litigants in informally resolving their claims.  But

1   Plaintiffs have not identified how the state and federal

2   tribunal could arrive at conflicting results in a legal sense.

3   Nor can the Court.

4       Furthermore, Colorado River abstention is not appropriate

5   for every risk of piecemeal litigation.  Id.  The risk of

6   conflicting state and federal court judgments must be one that

7   undermines a federal policy or a federal interest in uniformity.

8   Id. at 842-43.  Allowing Plaintiffs' suits to proceed

9   concurrently in state and federal courts will not implicate or

10  risk undermining any national interests in uniformity.

11      Finally, the state court proceedings will not "adequately

12  protect the rights of the federal litigants" or "resolve all

13  issues before the federal court."  See id. at 845.  Plaintiffs

14  insist that State Farm's lien on Plaintiffs' state-court

15  proceedings sufficiently guards State Farm's interests.  Mot. to

16  Stay at 11-12.  But the fact that State Farm's lien may

17  ultimately reimburse previously-paid benefits does not answer

18  the question of whether State Farm breached its contract, acted

19  in bad faith, or violated Michigan law by initially denying

20  those benefits.  The state court proceedings are therefore

21  inadequate to protect Defendant's interests in this case.

22      The prospect of informal settlement also does not satisfy

23  Colorado River's "parallelism" factor.  Plaintiffs contend that,

24  given the current settlement discussions, "there is only a small

25  doubt that the resolution of state court actions will not

26  [resolve] this action."  Id. at 12. But the question of

27  parallelism factor asks whether a state proceeding will resolve

28  the issues presented in a federal court as a matter of law, not

1    as a matter of practicality.  See Seneca Insur. Co., 862 F.3d at

2    845.  And, as a matter of law, the Court finds resolution of

3    Plaintiffs' personal injury claims will leave Plaintiffs'

4    insurance claims unresolved.

5        Although some Colorado River factors weigh in favor of

6    abstention, the parallelism factor is ultimately dispositive.

7    See id. at 845 (quoting Cone Mem'l Hosp., 460 U.S. at 28, 103 S.

8    Ct. 927 ("When a district court decides to dismiss or stay under

9    Colorado River, it presumably concludes that the parallel state-

10   court litigation will be an adequate vehicle for the complete

11   and prompt resolution of the issues between the parties. If

12   there is any substantial doubt as to this, it would be a serious

13   abuse of discretion to grant the stay or dismissal at all.")).

14   The Court therefore finds Colorado River abstention is improper

15   here.

16       B.   Transfer

17       Defendant requests the Court transfer this case to the

18   Eastern District of Michigan.  Federal law governs this motion.

19   Ravelo Monegro v. Rosa, 211 F.3d 509, 511-12 (9th Cir. 2000).

20   More specifically, because Defendant seeks to transfer this case

21   from one federal district court to another, 28 U.S.C. § 1404(a)

22   applies.

23       When assessing the propriety of a section 1404 transfer, a

24   district court must first determine whether Plaintiffs could

25   have originally brought their suit in the transferee district.

26   Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960).  If so, the

27   court then "evaluate[s] both the convenience of the parties and

28   various public-interest considerations."  Atlantic Marine Const.

1  Co., Inc. v. U.S. Dist. Court for Western Dist. Of Texas, 571
2  U.S. 49, 62 (2013).  Upon weighing these private- and public-
3  interest factors, the court must "decide whether, on balance, a
4  transfer would serve 'the convenience of the parties and
5  witnesses' and otherwise promote 'the interests of justice.'"
6  Id. at 62-63 (quoting 28 U.S.C. § 1404(a)).

7      It is undisputed that Plaintiffs could have originally
8  filed their suit against State Farm in the Eastern District of
9  Michigan.  The Eastern District of Michigan would have had both
10 personal jurisdiction over the parties and subject-matter
11 jurisdiction over the suit.  See Mot. to Transfer at 7-8.  Venue
12 would have also been proper.  See id.  The propriety of
13 Defendant's motion therefore turns upon whether transferring the
14 case to the Eastern District of Michigan would promote both the
15 convenience of the parties and the interests of justice.

16          1.   Private Interest Factors

17     To determine whether the convenience of the parties and
18 witnesses is best served by transferring the case, courts
19 consider: (1) where the relevant agreements were negotiated;
20 (2) what state is most familiar with the governing law; (3) the
21 plaintiff's choice of forum; (4) the parties' contacts with the
22 forum; (5) the contacts relating to the plaintiff's cause of
23 action in the chosen forum; (6) the differences in cost of
24 litigation in the two forums; (7) the availability of compulsory
25 process to compel attendance of unwilling non-party witnesses;
26 and (8) the ease of access to sources of proof.  See Jones v.
27 GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).
28 Defendant bears the burden of showing that the transferee

9

1   district would be "a more convenient forum, not a forum likely

2   to prove equally convenient or inconvenient." Pizana v.

3   SanMedica Int'l LLC, No. 1:18-cv-00644-DAD-SKO, 2019 WL 4747947,

4   at *3 (E.D. Cal. Sept. 30, 2019)

5        Quoting Atlantic Marine Const. Co., Inc., Defendant argues,

6   "When a defendant files a section 1404(a) motion, a district

7   court should transfer the case unless extraordinary

8   circumstances unrelated to the convenience of the parties

9   clearly disfavor a transfer." 571 U.S. at 52. This selective

10  reading of Atlantic Marine is incorrect. The "extraordinary

11  circumstances" standard only applies when a Defendant invokes

12  section 1404(a) to enforce a forum-selection clause. Id. "The

13  presence of a valid forum-selection clause requires district

14  courts to adjust their usual § 1404(a) analysis." Id. at 63.

15  The court may not give any weight to the plaintiff's choice of

16  forum. Id. Nor may it consider any factors related to the

17  parties' or witnesses' convenience. The purpose of these

18  modifications is to give the forum-selection clause "controlling

19  weight in all but the most exceptional cases." Id. at 63. But

20  Defendant does not identify any forum-selection clause that its

21  motion seeks to enforce. Defendant therefore bears the burden

22  of showing that the Eastern District of Michigan is a more

23  convenient forum for both the parties and the witnesses.

24       The Court finds three private-interest factors weigh in

25  favor of transferring this suit to the Eastern District of

26  Michigan. As Defendant argues, the insurance policies were

27  negotiated and executed in Michigan. Mot. to Transfer at 6.

28  Moreover, Michigan's No-Fault Automobile Act is the basis for

1   Plaintiffs' claims.  Id.  Lastly, the parties' contacts with the

2   forum counsel toward transferring the suit.  Plaintiffs are

3   Michigan residents.  Mot. at 8.  And eight of the State Farm

4   claim handlers involved in Plaintiffs' claims reside in

5   Michigan.  Id. at 10.

6       The private-interest factors favoring transfer do not, by

7   themselves, outweigh the compelling reasons for keeping the suit

8   in this district.  Plaintiffs' choice of forum is entitled to

9   significant deference.  Admittedly, "the strong presumption in

10  favor of the plaintiff's choice of forum" only exists when the

11  plaintiff chooses to sue in her home forum.  Piper Aircraft Co.

12  v. Reyno, 454 U.S. 235, 255-56 (1981).  As Piper Aircraft

13  explained, "when the home forum has been chosen, it is

14  reasonable to assume that this choice is convenient," but

15  "[w]hen the plaintiff is foreign, [] this assumption is much

16  less reasonable."  Id.  Absent evidence to the contrary, a

17  plaintiff's decision to sue outside her home forum triggers

18  concerns that she has prioritized gamesmanship over judicial

19  efficiency.  In re Apple, Inc., 602 F.3d 909, 913 (8th Cir.

20  2010).  But there is evidence to the contrary here.  As already

21  discussed, California is likely the only state where Plaintiffs

22  could litigate all three cases arising out of their California

23  accident in a single forum.  Defendant does not present any

24  evidence to suggest Plaintiff filed this suit in California to

25  avail itself of different substantive law or to impede

26  Defendant's ability to litigate.  Contra id.  Indeed,

27  Plaintiffs' choice of a foreign forum attempted to serve, not

28  deplete, the judicial economy.  The Court does not find that

11

1  Plaintiffs' decision to sue outside their home state reflects

2  sharp practices.  Accordingly, the Court affords their choice of

3  forum significant deference.

4       For many of the same reasons, the Court also finds that the

5  contacts relating to the plaintiff's cause of action in this

6  district cut against transferring the suit to Michigan.  There

7  are significant contacts relating Plaintiffs' suit to

8  California: the underlying accident occurred in California and

9  two other suits arising out of the injuries caused by that

10  accident are pending in a California court.  Although this case

11  presents distinct legal issues, the Court cannot deny the

12  relationship between the relief Plaintiffs seek and Plaintiffs'

13  chosen forum.

14       Finally, the increased cost of litigating in two forums

15  weighs against transferring the case.  Defendant's removal has

16  already required Plaintiffs to litigate their suits in both

17  federal and state court.  If this suit is transferred,

18  Plaintiffs will have to litigate at the federal and state level

19  in two different states.  Plaintiffs represent they would have

20  to retain new counsel if the Court transferred this case to

21  Michigan.  Opp'n to Transfer at 9.  Plaintiffs will lose the

22  benefit of having legal counsel who is involved and familiar

23  with the state court proceedings, and they will incur additional

24  expenses as their newly-retained counsel gets up to speed.  Id.

25  Defendant argues that any inconvenience of proceeding in

26  multiple states is remedied by the fact that the transferee

27  district is in Plaintiffs' home state.  Mot. to Transfer at 9.

28  If true, Plaintiffs presumably would not oppose the transfer.

1    The remaining two factors—the availability of compulsory

2  process to compel attendance of unwilling non-party witnesses

3  and the ease of access to sources of proof—apply neutrally.

4  Defendant argues that Plaintiffs have submitted claims to State

5  Farm from 19 healthcare providers in Michigan and 10 healthcare

6  providers in California.  Mot. to Transfer at 10.  This ratio,

7  without context, provides the Court little guidance.  More

8  relevant to the witness-inconvenience inquiry is which

9  healthcare providers the parties intend to call as witnesses and

10  whether any of them would be unwilling to testify absent

11  compulsory process.  See Applied Elastomerics, Inc. v. Z-Man

12  Fishing Products, Inc., No. 06-cv-2469-CW, 2006 WL 2868971, at

13  *4-5 (N.D. Cal. Oct. 6, 2006).  Plaintiffs represent that many

14  of the relevant out-of-state medical providers already plan to

15  travel to California to testify in the state-court proceedings.

16  Opp'n to Transfer at 11.  To that end, transferring this suit to

17  Michigan would not free the witnesses from traveling to

18  California; it would simply require duplicative testimony.  Id.

19  The Court finds Defendant's arguments on the witness-convenience

20  factor are too generalized to counsel in favor of transferring

21  this suit.  Defendant's sources-of-proof argument is likewise

22  too vague to support its motion for transfer.  See Mot. to

23  Transfer at 10-11.

24          2.   Public Interest Factors

25    A district court must also ask whether a section 1404(a)

26  transfer would serve the "interests of justice."  28 U.S.C.

27  § 1404(a).  Relevant public interest factors include: (1) the

28  administrative difficulties flowing from court congestion;

1    (2) the 'local interest in having localized controversies

2    decided at home'; (3) the interest in having the trial of a

3    diversity case in a forum that is at home with the law that must

4    govern the action; (4) the avoidance of unnecessary problems in

5    conflict of laws, or in the application of foreign law; and

6    (5) the unfairness of burdening citizens in an unrelated forum

7    with jury duty.  Decker Coal Co. v. Commonwealth Edison Co., 805

8    F.2d 834, 843 (9th Cir. 1986) (citing Piper Aircraft, 454 U.S.

9    at 255); Leetsch v. Freedman, 260 F.3d 1100, 1105 (9th Cir.

10   2001))

11        As Defendant argues, all of the public interest factors

12   weigh in favor of transferring this suit to the Eastern District

13   of Michigan.  Mot. to Transfer at 11-12.  Plaintiffs do not

14   meaningfully refute this.  See Opp'n to Transfer at 11-12.  They

15   argue that California has an interest in "maintaining

16   jurisdiction over this case and staying it so that the state

17   court proceedings can [] be [timely] resolved," but do not

18   provide any authority to support this claim.  Id. at 12.

19   Indeed, Plaintiffs continue to ignore that the claims pending in

20   state court will not legally resolve the claims at issue here.

21   Id.  And while California has an interest in retaining

22   jurisdiction over personal injury suits that arise within its

23   borders, its interest in adjudicating disputes arising under

24   out-of-state insurance policies is, as Defendant argues "tenuous

25   at best."  Def.'s Reply re Transfer at 5, ECF No. 11.

26   ///

27   ///

28   ///

14

1

3.   <u>Conclusion</u>

2     The Court finds a section 1404 transfer is appropriate

3 here.  Several private interest factors and all of the public

4 interest factors indicate that this suit is better suited in the

5 Eastern District of Michigan.  <u>See</u> <u>Wireless consumers Alliance,</u>

6 <u>Inc. v. T-Mobile USA, Inc.</u>, No. C 03-3711 MHP, 2003 WL 22387598,

7 at *4 (N.D. Cal. Oct. 14, 2003) ("The question of which forum

8 will better serve the interest of justice is of predominant

9 importance on the question of transfer, and factors involving

10 convenience of parties and witnesses are in fact subordinate.").

11 The Court therefore grants Defendant's motion to transfer.

12     C.   <u>Stay</u>

13     The Court declines to adjudicate Plaintiffs' motion for a

14 discretionary stay.  Mot. to Stay at 5-6.  Having found that a

15 section 1404 transfer is appropriate, the Court also finds that

16 the Eastern District of Michigan is better equipped "to control

17 the disposition of the causes on its docket."  <u>See</u> <u>Landis v.</u>

18 <u>North Am. Co.</u>, 299 U.S. 248, 254-55 (1936).

19     D.   <u>Page Limits</u>

20     The Court's Order re Filing Requirements ("Order"), ECF No.

21 2-2, limits reply briefs in support of motions to stay and

22 motions to transfer venue to five (5) pages.  Order at 1.  A

23 violation of the Order requires the offending counsel (not the

24 client) to pay $50.00 per page over the page limit to the Clerk

25 of Court.  <u>Id.</u>  The Court does not consider arguments made past

26 the page limit.  <u>Id.</u>  Defendant's reply brief in support of its

27 motion to transfer exceed the page limit by one (1) page.

28 Defense counsel must therefore send a check payable to the Clerk

15

1    for the Eastern District of California for $50.00 no later than

2    seven days from the date of this Order.  Plaintiffs' reply brief

3    in support of their motion to stay exceeded the page limit by

4    two (2) pages.  Plaintiffs' counsel must send a check payable to

5    the Clerk for the Eastern District of California for $100.00 no

6    later than seven days from the date of this order.

7

8                         III.   ORDER

9        For the reasons set forth above, the Court GRANTS

10   Defendant's motion to transfer.  Moreover, the Court DENIES

11   Plaintiffs' motion to exercise <u>Colorado River</u> abstention and

12   DECLINES TO ADJUDICATE Plaintiffs' motion for a discretionary

13   stay.

14       IT IS SO ORDERED.

15   Dated: June 15, 2020

16

17                                      _____
                                        JOHN A. MENDEZ,
18                                      UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28

                              16